UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| P. O'Gorman, | ) |
| | ) |
| | ) Index No. |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MERCER KITCHEN L.L.C., | ) **COMPLAINT** |
| MERCER HOTEL CORPORATION (N/K/A | ) |
| BD PRINCE MANAGER CORP.), | ) |
| JEAN-GEORGES MANAGEMENT LLC, | ) |
| | ) |
| Defendants. | ) |

Plaintiff was viciously sexually harassed by the lobby manager of the Mercer Hotel, whose conduct was well-known to his employers. Plaintiff complained, and was fired two weeks later.

This case concerns egregious violations of law that must be swiftly remedied.

Plaintiff P. O'Gorman ("Mr. O'Gorman"), by and through his undersigned counsel, Josh Bernstein P.C., for his Complaint against Defendants Mercer Kitchen L.L.C. ("Mercer Kitchen"), Mercer Hotel Corporation (N/K/A BD PRINCE MANAGER CORP.) ("Mercer Hotel"), and Jean-Georges Management LLC, ("Jean-Georges") (Collectively "Defendants"), alleges as precedes and follows. In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial of this action.

1

## Nature of the Action:
## Sexual Harassment, Sexual Orientation Discrimination, and Retaliation

1. Mr. O'Gorman brings suit under Title II and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.,* and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 et. Seq..

## Jurisdiction and Venue

2. This Court possesses subject matter jurisdiction pursuant to 28 USC § 1331 and 28 USC § 1367 (supplemental jurisdiction).

3. Venue is proper in this District pursuant to 28 USC § 1391(b)(1-2).

4. Plaintiff has received a right-to-sue letter from the Equal Employment Opportunity Commission dated December 27, 2019.

## The Parties

5. Plaintiff P. O'Gorman is a male resident of New York.

6. Mr. O'Gorman was employed as a server at the Mercer Kitchen, a restaurant located in the lobby of the Mercer Hotel in New York, NY.

7. Defendant Mercer Kitchen L.L.C. is, upon information and belief, the corporate entity that owns and operates the Mercer Kitchen. Mercer Kitchen L.L.C. resides in New York, NY.

8. Upon information and belief, Defendant Jean-Georges Management, LLC is the management company for the restaurants of Jean-Georges Vongerichten, a celebrity chef. Jean-Georges Management, LLC administers human resources for the Mercer Kitchen. Jean-Georges Management, LLC resides in New York, NY.

9. Upon information and belief, Defendant Mercer Hotel Corporation (N/K/A BD Prince Manager Corp.) owns and operates the Mercer Hotel. Mercer Hotel Corporation resides in New York, NY.

### Factual Allegations

10. Mr. O'Gorman began working for the Mercer Kitchen as a server in late February 2019.

### Sexual Harassment

11. S. Kurmemaj ("Kurmemaj") is the Lobby Manager of The Mercer Hotel.

12. In early March 2019, Mr. O'Gorman met Kurmemaj for the first time and introduced himself. Kurmemaj looked his body up and down and replied: "Nice", in an overtly sexualized manner.

13. Throughout Mr. O'Gorman's employment, Kurmemaj repeatedly commented about men in the building he considered attractive, and told Mr. O'Gorman that he was the best-looking person in the restaurant on several occasions.

14. On or about the week of March 19, 2019, Kurmemaj came up to Mr. O'Gorman and began to hug him. Mr. O'Gorman politely told Kurmemaj that he was not the hugging kind, and Kurmemaj retorted: "but I am, and this is a hugging kind of place". Kurmemaj proceeded to try and hug Mr. O'Gorman each time they worked together.

15. Approximately one week later, Mr. O'Gorman informed Kurmemaj that he thought a particular hotel guest might make a complaint about Kurmemaj. Kurmemaj's response was to tell Mr. O'Gorman to "blow" him, in a rather sleazy tone. Mr. O'Gorman said: "Really?", and Kurmemaj replied: "Yeah, blow me".

16. During the same week, Mr. O'Gorman apprised Kurmemaj about a guest's wineglass that had been cleared prematurely. Kurmemaj proceeded to turn around, spread his butt cheeks with his hands, and tell Mr. O'Gorman to "rim" him.

17. Mr. O'Gorman discussed some of these incidents with his co-worker M. Sanchez, and one of his floor managers, M. Estrada. When Mr. O'Gorman discussed the issue with Mr. Estrada and said: "Can you believe he thinks it's ok to talk like this", Mr. Estrada replied something along the lines of "Yeah, it sucks."

18. On or about the first week of April 2019, Mr. O'Gorman approached Kurmemaj in the back office to discuss a customer who was not staying at the hotel. Kurmemaj said, "don't come in here", but Mr. O'Gorman entered the room. Kurmemaj proceeded to undo his belt and gesture for Mr. O'Gorman to perform oral sex on him as some sort of punishment for entering the office. Another employee by the name of P. Washam – who may be Kurmemaj's supervisor – was in the office at the time, and she jokingly remarked: "Do you want me to leave?" Mr. O'Gorman reported this incident to floor manager Y. Feng.

19. On or about the second week of April 2019, Kurmemaj approached Mr. O'Gorman from behind and whispered in his ear: "Hey [P], how are you?" Mr. O'Gorman turned around and said he was fine, at which point Kurmemaj looked down at Mr. O'Gorman's genital area and said "Oh, you have an erection[1]", which was not true.

20. Also during April 2019, Mr. O'Gorman had a conversation with Kurmemaj wherein Mr. O'Gorman told Kurmemaj that it wasn't his job to fix the curtains in the lobby.

---

[1] Mr. O'Gorman cannot recall if Mr. Kurmemaj used the term erection or a more vernacular term, such as "boner" or "hard-on".

Kurmemaj replied: "Blow me", told Mr. O'Gorman to go to the back stairwell with him to be "dealt with", and attempted to lead Mr. O'Gorman to the stairwell.

21. Sometime in late April or early May 2019, Kurmemaj called Mr. O'Gorman over to table 60 and said: "I didn't know you played softball, not football". Mr. O'Gorman replied: "I play neither, I play rugby". Kurmemaj responded: "I can never tell if someone is gay or not". Mr. O'Gorman told Kurmemaj that it was none of his business.

22. Mr. O'Gorman subsequently learned that Kurmemaj had asked his co-worker, M. Sanchez, if Mr. O'Gorman was gay, which Mr. Sanchez had confirmed. When Mr. Gorman asked Mr. Sanchez about this, a co-worker by the name of T. Stoute-Primo overheard the conversation and opined: "It's none of [Kurmemaj's] business, how dare he ask about your sexual orientation!"

23. During the week of the Met Gala, Kurmemaj told Mr. O'Gorman: "Remember, my dick is bigger than yours, even if it isn't, it is."

24. During May 2019, on a number of occasions when Mr. O'Gorman was assigned to work outside of the lobby, Kurmemaj would loudly opine to bartenders E. Wynkoop and B. Herdrich: "You know what's good about today? [P] isn't working in the lobby." Kurmemaj would make these comments within earshot of Mr. O'Gorman and his co-workers, and then come over to Mr. O'Gorman to instigate a hug.

25. On or about the first week of June 2019, Kurmemaj again turned around, spread his butt cheeks, and told Mr. O'Gorman to rim him. The new General Manager, A. Green was doing her rounds at the time, and Mr. O'Gorman reported the incident to her. They both agreed that this needed to be reported to human resources because Kurmemaj's behavior was beyond the pale and needed to be stopped.

26. Upon information and belief, Kurmemaj was issued some sort of written reprimand as a result of this complaint.

27. Despite Mr. O'Gorman's complaint, during the second week of June 2019, Kurmemaj crept up behind Mr. O'Gorman and whispered in his ear: "Hey [P]". Mr. O'Gorman replied: "Hello [Kurmemaj]". Kurmemaj proceeded to look over Mr. O'Gorman's shoulder and down at his crotch while grossly uttering: "Mmmmmmmhhh".

28. During the last days of Mr. O'Gorman's employment at The Mercer Kitchen, Kurmemaj walked by Mr. O'Gorman on several occasions and muttered: "Sexual harassment, HR"

**Homophobia**

29. While Mr. O'Gorman was being sexually harassed by Kurmemaj, another co-worker by the name of E. Vilarroel ("Vilarroel") repeatedly subjected Mr. O'Gorman to homophobic remarks.

30. During the first week of April 2019, Mr. O'Gorman was changing clothes in the men's locker room at the end of his shift. Vilarroel entered the locker room and asked Mr. O'Gorman: "What are you doing here?" Mr. O'Gorman was confused, and replied: "What do you mean?" Vilarroel retorted: "You should not be here, you should be in the women's locker room".

31. On or about May 30, 2019, Mr. O'Gorman received a $100 tip from a relatively famous young rapper. Quite pleased with the tip, Mr. O'Gorman remarked to Vilarroel: "Hey, look at this, $100 tip, back of the net!" Vilarroel snarled: "Yeah, the only reason you got that tip is because you took him downstairs and gave him a blowjob." Mr. O'Gorman was flabbergasted. He told Vilarroel: "Never ever speak to me like that again,

it's sexual harassment, and if you do ever speak to me like that again, I will report it".

32. Vilarroel refused to apologize, and Mr. O'Gorman reported his bigoted comments to floor manager D. Run. Upon information and belief, Vilarroel received some sort of written reprimand for this incident.

33. And yet, during the second week of June 2019, when Mr. O'Gorman and Vilarroel were both working downstairs, Vilarroel said to Mr. O'Gorman: "Hey mademoiselle". Mr. O'Gorman was understandably irate, and replied: "What is wrong with you, how on earth do you think it's ok to say something like that given what happened last week?" Vilarroel ultimately replied: "You got me into trouble last week, you know I was only joking".

34. Mr. O'Gorman reported this incident to floor manager D. Run.

### Mr. O'Gorman's Termination

35. On June 20, 2019, Mr. O'Gorman came around the corner of the barista station while C. Figueroa ("Figueroa") was coming the other direction. Both men neglected to say "corner", but Mr. O'Gorman was able to duck under the tray Figueroa was carrying and avoid a collision. Figueroa told Mr. O'Gorman, in a loud, aggressive tone: "You know you have to say corner!" Mr. O'Gorman, mindful of the fact that Figueroa had also neglected to say "corner", made a flippant reply.

36. Figueroa asked Mr. O'Gorman what he said, and came rushing back to the barista station to start an altercation. Figueroa initiated physical contact with Mr. O'Gorman, who attempted to leave the area. Figueroa got right up into Mr. O'Gorman's face and yelled that he was going to "fuck [Mr. O'Gorman] up", that he was going to wait for Mr.

7

O'Gorman when his shift ended, and that he was going to call his brother and they would both "fuck [Mr. O'Gorman] up".

37. As Figueroa invaded Mr. O'Gorman's personal space and inched closer, Mr. O'Gorman pushed Figueroa away in self-defense. Figueroa walked away momentarily, but then came rushing back and punched Mr. O'Gorman.

38. Figueroa then ran down the stairs while saying that he was going to "fuck [Mr. O'Gorman] up" at the end of his shift and that he would be waiting for him. During this altercation, two of Mr. O'Gorman's teeth were chipped.

39. Mr. O'Gorman was then called into the office for an interview and explained what had happened. Mr. O'Gorman was told that he was being suspended.

40. Mr. O'Gorman was informed that Figueroa had quit and left the building, but was across the street from the staff exit at Fanelli's Café waiting for Mr. O'Gorman to leave, presumably to make good on his threat and jump Mr. O'Gorman. As a result, someone unlocked Mr. O'Gorman's bike and brought it around to the front of the hotel so that Mr. O'Gorman could be safely escorted through the lobby to his transportation and exit.

41. Mr. O'Gorman subsequently learned that he had been fired as of July 5th, 2019.

**Joint Liability**

42. Plaintiff was explicitly employed both by the Mercer Kitchen and Jean-Georges Management, LLC; both names appeared on his paystubs.

43. Jean-Georges Management LLC provides human resources for the Mercer Kitchen and is involved in hiring and firing for the Mercer Kitchen; it is referred to as "corporate" by Mercer Kitchen employees.

8

44. The Mercer Kitchen is a fully integrated amenity of the Mercer Hotel, functioning as the hotel's in-house restaurant. The Mercer Kitchen also provides room service for the Mercer Hotel.

45. The Mercer Hotel exerts influence and/or control over hiring and firing at the Mercer Kitchen, which is located entirely within the Mercer Hotel.

46. Plaintiff is aware of at least one co-worker who was going to be fired by the Mercer Kitchen, until the Mercer Hotel exercised its role in hiring and firing at the Mercer Kitchen to prevent the termination.

47. The Mercer Hotel exerts influence and/or control over the means and manner of the performance of Mercer Kitchen employees. For example, Mercer Hotel staff, including Kurmemaj, assign tasks to Mercer Kitchen employees and exert influence and/or control over where employees are assigned within the Mercer Kitchen.

48. The Mercer Hotel's premises and equipment are used by the employees of the Mercer Kitchen.

49. Mercer Kitchen employees are readily moved between the Mercer Kitchen and restaurants/hotels that are part of the same group as the Mercer Hotel. For example, one of Plaintiff's colleague worked at the Sunset Beach Hotel over the summer of 2019.

**First Cause of Action:**
**Gender Discrimination (Sexual Harassment) Under Title VII**

50. Plaintiff repeats and realleges the allegations contained in paragraphs 1-49 inclusive as if they were fully set forth herein.

51. The aforesaid actions of the Defendants constitute a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

52. As a result of Defendants' violation of Title VII, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because Defendants' actions were intentional, malicious, and without justification or excuse, or reckless or negligent as to Plaintiff's rights, punitive damages.

**Second Cause of Action:**
**Gender Discrimination (Sexual Harassment) Under the NYCHRL**

53. Plaintiff repeats and realleges the allegations contained in paragraphs 1-49 inclusive as if they were fully set forth herein.

54. The aforesaid actions of the Defendants constitute a violation of the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 *et. Seq.*

55. As a result of Defendants' violation of the NYCHRL, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because Defendant's actions were intentional, malicious, and without justification or excuse, punitive damages.

**Third Cause of Action:**
**Gender Discrimination (Sexual Harassment)**
**in Public Accommodations Under Title II**

56. Plaintiff repeats and realleges the allegations contained in paragraphs 1-49 inclusive as if they were fully set forth herein.

57. The aforesaid actions of the Mercer Hotel constitute a violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

58. As a result of Defendant's violation of Title II, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because Defendant's actions were intentional, malicious, and without justification or excuse, punitive damages.

**Fourth Cause of Action:**
**Gender Discrimination (Sexual Harassment)**
**in Public Accommodations Under the NYCHRL**

59. Plaintiff repeats and realleges the allegations contained in paragraphs 1-49 inclusive as if they were fully set forth herein.

60. The aforesaid actions of the Mercer Hotel constitute a violation of the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 et. Seq.

61. As a result of Defendant's violation of the NYCHRL, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because Defendant's actions were intentional, malicious, and without justification or excuse, punitive damages.

**Fifth Cause of Action:**
**Gender/Sexual Orientation Harassment Under Title VII**

62. Plaintiff repeats and realleges the allegations contained in paragraphs 1-49 inclusive as if they were fully set forth herein.

63. The aforesaid actions of the Defendants constitute a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

63. As a result of Defendants' violation of Title VII, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because Defendants' actions were intentional, malicious, and without justification or excuse, or reckless or negligent as to Plaintiff's rights, punitive damages.

**Sixth Cause of Action:
Sexual Orientation Harassment Under the NYCHRL**

64. Plaintiff repeats and realleges the allegations contained in paragraphs 1-49 inclusive as if they were fully set forth herein.

65. The aforesaid actions of the Defendants constitute a violation of the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 et. Seq.

66. As a result of Defendants' violation of Title VII, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because Defendants' actions were intentional, malicious, and without justification or excuse, or reckless or negligent as to Plaintiff's rights, punitive damages.

**Seventh Cause of Action:
Retaliation Under Title VII**

67. Plaintiff repeats and realleges the allegations contained in paragraphs 1-49 inclusive as if they were fully set forth herein.

68. The aforesaid actions of the Defendants constitute a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

69. As a result of Defendants' violation of Title VII, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because Defendants' actions were intentional, malicious, and without justification or excuse, or reckless or negligent as to Plaintiff's rights, punitive damages.

**Eighth Cause of Action:**
**Retaliation Under the NYCHRL**

70. Plaintiff repeats and realleges the allegations contained in paragraphs 1-49 inclusive as if they were fully set forth herein.

71. The aforesaid actions of the Defendants constitute a violation of the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 et. Seq.

72. As a result of Defendants' violation of the NYCHRL, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because Defendants' actions were intentional, malicious, and without justification or excuse, or reckless or negligent as to Plaintiff's rights, punitive damages.

**Ninth Cause of Action:**
**Gender Discrimination (Termination) Under Title VII**

73. Plaintiff repeats and realleges the allegations contained in paragraphs 1-49 inclusive as if they were fully set forth herein.

74. The aforesaid actions of the Defendants constitute a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

75. As a result of Defendants' violation of Title VII, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because Defendants' actions were intentional, malicious, and without justification or excuse, or reckless or negligent as to Plaintiff's rights, punitive damages.

**Tenth Cause of Action:**
**Gender Discrimination (Termination) Under the NYCHRL**

76. Plaintiff repeats and realleges the allegations contained in paragraphs 1-49 inclusive as if they were fully set forth herein.

77. The aforesaid actions of the Defendants constitute a violation of the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 et. Seq.

78. As a result of Defendants' violation of the NYCHRL, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because Defendants' actions were intentional, malicious, and without justification or excuse, or reckless or negligent as to Plaintiff's rights, punitive damages.

WHEREFORE, Plaintiff P. O'Gorman requests judgment against Defendants as follows: That this Court Order: i) Defendants to reinstate the Plaintiff; ii) Defendants to pay monetary damages in an amount to be determined at trial including compensatory damages, back pay, front pay, interest, emotional distress/pain & suffering damages, liquidated damages, treble damages, punitive damages, and civil penalties & costs, including attorney's fees; iii) an award of such other and further relief as the Court deems just and proper.

Dated: February 18, 2020               Josh Bernstein, P.C.
                                       *Counsel for Plaintiff*

                                       By:_____/s/_____
                                       Joshua Alexander Bernstein
                                       175 Varick Street
                                       New York, NY 10014
                                       (646) 308-1515
                                       jbernstein@jbernsteinpc.com