USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/7/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
 :
P. O'GORMAN, :
 :
                       Plaintiff, :
 : 20-cv-1404 (LJL)
     -v- :
 : OPINION AND ORDER
MERCER KITCHEN, et al., :
 :
                       Defendants. :
 :
---------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Non-party Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") moves to quash a subpoena served on it by Plaintiff P. O'Gorman ("Plaintiff").  Dkt. No. 71.  For the following reasons, the motion to quash is granted.

## BACKGROUND

      Plaintiff was employed as a server for the Mercer Kitchen from February to June 2019. In the underlying lawsuit, he alleges that he was the victim of sexual harassment by the lobby manager of the Mercer Hotel (in which the Mercer Kitchen was located), Semmy Kurmemaj, and that his employment was terminated in retaliation for his complaints about sexual harassment. He brings his claims under Title VII and under New York City law.

      On or about January 14, 2021, Plaintiff served a Rule 45 subpoena on Pillsbury calling for certain documents in its possession, custody, and control.  Pillsbury is a national law firm that which provides employment advice, among other areas of specialty.  It serves as outside legal counsel to Mercer Management LLC ("Mercer Management"), which manages Mercer Hotel and

provides ongoing direction and supervision to hotel staff. Dkt. No. 73 ("Rizzo Decl.") ¶¶ 3-4.[1] Mercer Management first engaged Pillsbury in 2015, and Pillsbury describes the scope of its engagement as "relating to employment and other legal matters." *Id.* ¶ 3; *see* Dkt. No. 86 ("Second Rizzo Decl.") ¶ 6. The lead partner for the attorney-client relationship is Kenneth W. Taber, a partner in Pillsbury's New York City office, and a member of the New York bar. Second Rizzo Decl. ¶ 6.

During the period of 2018–2020, Getnick & Getnick LLP ("Getnick & Getnick") in New York served as counsel to Mercer Management. *Id.* ¶ 7. In 2018, Mercer Management retained Pillsbury to conduct a confidential investigation after a Mercer Hotel employee, who received harassment training from Mercer Hotel, made affirmative statements to several of her hotel colleagues regarding the money to be made by lodging a harassment complaint and shortly thereafter filed an internal complaint regarding harassment and other misconduct at the hotel and retained personal counsel. *Id.* ¶¶ 8; Rizzo Decl. ¶¶ 4-5. Pillsbury was retained for the purpose of providing legal advice allegedly "in light of the clear threat of litigation." Rizzo Decl. ¶ 6. The request was conveyed by Getnick & Getnick on behalf of Mercer Management. Second Rizzo Decl. ¶ 9.

The investigation was conducted by Rebecca Carr Rizzo, a special counsel in Pillbury's Washington, D.C. office, who is admitted to the D.C. and Virginia bars. *Id.* ¶¶ 1, 10. Ms. Rizzo conducted the investigation under the supervision of Mr. Taber and Mr. Neil Getnick, the managing partner of Getnick & Getnick who is a member of the New York bar. *Id.* ¶ 10. The investigation entailed interviewing multiple current Mercer Hotel employees and Ms. Rizzo communicated both in writing and orally about the investigation with Mr. Taber and Getnick &

---

[1] Mercer Hotel, but not Mercer Management, is a defendant in the underlying action.

Getnick, providing updates and discussing legal strategy. *Id.* ¶ 11. Pillsbury did not prepare a written report regarding the investigation and did not share any documentation or any other information regarding the results of the investigation with anyone outside of Mercer Management and Getnick & Getnick. *Id.* ¶ 12; Rizzo Decl. ¶ 7. The investigation concluded with Pillsbury negotiating a settlement with the complainant's counsel, thereby avoiding litigation. Second Rizzo Decl. ¶ 13.

In August 2019, Getnick & Getnick, on behalf of Mercer Management, requested that Pillsbury conduct a confidential investigation regarding Plaintiff's allegations against Mercer Hotel. *Id.* ¶ 14. Pillsbury was informed that Plaintiff's employment had just been terminated and that he "had raised certain allegations regarding a Mercer Hotel employee, Semmy Kurmemaj." *Id.*; Rizzo Decl. ¶ 8. Mercer Management asked Pillsbury to "conduct [a] confidential investigation for the purpose of providing legal advice, given the . . . prospect of litigation." Second Rizzo Decl. ¶ 14; Rizzo Decl. ¶¶ 8-10. The investigation again was for the ostensible purpose of providing legal advice in the face of threatened litigation. Second Rizzo Decl. ¶¶ 14, 16. Ms. Rizzo conducted the investigation under the supervision of Mr. Taber and Mr. Getnick. *Id.* ¶ 17. The investigation again entailed interviewing multiple Mercer Hotel employees. *Id.*; Rizzo Decl. ¶ 11. It did not conclude with the preparation of a written report by Pillsbury regarding its investigation. Rizzo Decl. ¶ 11. During the course of the investigation, on August 12, 2019, Ms. Rizzo shared with Atlantic Human Resource Advisors ("AHRA")—a third-party human resources company utilized by Mercer Kitchen—that she was unable to corroborate any of Plaintiff's allegations and that Plaintiff apparently harbored animosity towards Mr. Kurmemaj. Second Rizzo Decl. ¶¶ 18-19. With that single exception, she never

shared any other information regarding Pillsbury's investigation with anyone outside of Mercer Management and Getnick & Getnick.  *Id.* ¶¶ 19, 20.

The subpoena seeks production of the following:

1. All documents related to any investigation of "Semmy Kurmemaj" or any individual with a similar name, or any investigation into said individual's conduct (particularly any investigation into allegations of sexual or other harassment by Mr. Kurmemaj).
2. All documents related to any investigation of allegations of sexual harassment by or against Mercer Hotel employee(s) within the past (6) years.
3. All documents related to any investigation concerning the complaint of Philip O'Gorman [i.e., Plaintiff].

Rizzo Decl., Ex. A.

Pillsbury moves to quash the subpoena on the grounds that the requested documents are protected against production by attorney-client privilege and/or the attorney work product doctrine.

## DISCUSSION

Federal Rule of Civil Procedure 45(d)(3)(A) provides that: "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).  "The party claiming the benefit of the attorney-client privilege has the burden of establishing all the essential elements."  *United States v. Adlman*, 68 F.3d 1495, 1500 (2d Cir. 1995).  Likewise, the burden of establishing the right to the protection of the attorney work product doctrine "is on the party asserting it, and 'is not discharged by mere conclusory or *ipse dixit* assertions.'"  *Johnson v. J. Walter Thompson U.S.A., LLC*, 2017 WL 3432301, at *5 (S.D.N.Y. Aug. 9, 2017) (quoting *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 225 (2d Cir. 1984)) (internal citation omitted).

4

### A.     Attorney-Client Privilege

"A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007); *accord United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). Obtaining or providing legal advice must be the "predominant purpose" of the communication. *Favors v. Cuomo*, 285 F.R.D. 187, 198 (E.D.N.Y. 2012). The privilege protects both the advice of the attorney to the client and the information communicated by the client that provides a basis for giving advice. *See Johnson*, 2017 WL 3432301, at *2 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981); *In re Grand Jury Witnesses*, 979 F.2d 939, 943-44 (2d Cir. 1992)).

Pillsbury has established each element of attorney-client privilege with respect to both investigations. The subpoena called for communications between Mercer Management and its attorney, Pillsbury. The documents were intended to be and were in fact kept confidential. Pillsbury was retained for the purpose of providing legal advice and the requested documents were made for the purpose of obtaining or providing that advice. In particular, the Supreme Court's decision in *Upjohn* and the decisions following *Upjohn* recognize that the attorney-client privilege extends to interviews conducted by counsel of current and former employees to gather facts for the purposes of providing legal advice. *See, e.g.*, *In re Refco Inc. Sec. Litig.*, 2012 WL 678139, at *2 (S.D.N.Y. Feb. 28, 2012); *In re General Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, (S.D.N.Y. Jan 15, 2015).

Plaintiff makes six responses. First, he argues that there is no evidence that counsel is admitted to the New York bar, which is where the communications took place. In response to that argument, Pillsbury has submitted evidence that Ms. Rizzo was supervised by Mr. Taber and

5

Mr. Getnick, both of whom are admitted to the New York bar, and that Ms. Rizzo was expressly authorized by New York's temporary practice rules to conduct investigations in New York under 22 N.Y.C.R.R. § 523.2(a)(3)(i).  Second Rizzo Decl. ¶¶ 6-7, 10.  That evidence is sufficient to support the claim that the communications were with counsel authorized in the practice of law.

Second, Plaintiff argues that Pillsbury has not supplied sufficient evidence that the communications were for the purpose of obtaining or providing *legal* advice.  Communications that are not made for the primary purpose of obtaining or providing legal advice do not enjoy the protection of the attorney-client privilege.  Plaintiff claims the work performed by Pillsbury is the "archetypical non-legal work typically performed by a company's human resources department."  Dkt. No. 77 at 1; *see id.* at 4.  The argument appears to be based on the premise that Mercer Management did no other investigation of Plaintiff's claim; from that premise, Plaintiff urges the conclusion that Pillsbury's work must have been non-legal in nature.

Plaintiff's argument is refuted both by the signed declarations before the Court and by the supporting facts, including the context of Pillsbury's retention.  Ms. Rizzo has now sworn twice to this Court that the purpose of the retention was to provide legal advice.  That assertion is corroborated by the relevant facts.  Pillsbury is a national law firm that provides legal advice; it does not provide human resources advice.  Ms. Rizzo is a practicing employment attorney at Pillsbury; she has never worked as a human resources professional and has received no training as a human resources professional.  Second Rizzo Decl. ¶ 3.  Perhaps most significantly, in each instance, Pillsbury was retained only in circumstances where a legal claim might be expected and after the point where one would expect the matter to involve primarily human resources advice.  It was retained for the first investigation only after the employee had filed an internal complaint and retained personal counsel.  It was retained for the second investigation only after Plaintiff's

6

complaint had been brought to Mercer Hotel's attention, and after Plaintiff's employment had ended. *Id.* ¶¶ 8-9, 14-16. At those points, the matters implicated legal issues and not the human resources issues of how to manage a current employee.

Third, Plaintiff argues that Pillsbury waived the privilege by sharing information regarding the second investigation with AHRA. This argument is based on Ms. Rizzo's email to AHRA reporting that she was conducting an investigation and had reviewed the email that AHRA had sent to the managing director of the Mercer Hotel, and that she would like to speak to AHRA before she interviewed the hotel employee who would be the subject of the investigation. *See* Dkt. No. 76-4. There is nothing privileged in the communication. Ms. Rizzo has also disclosed in her declaration that she had a conversation with an AHRA representative in which she stated that she was unable to corroborate any of Plaintiff's allegations and that Plaintiff apparently harbored animosity towards Kurmemaj, but Ms. Rizzo never shared any other information or documentation with AHRA regarding Pillsbury's investigation. Second Rizzo Decl. ¶ 19.[2]

---

[2] Plaintiff also argues that the protection of the attorney-client privilege has been waived because the reasonableness of the investigation and counsel's advice have been put at issue in this case. It claims that Defendants cannot assert a *Faragher/Ellerth* affirmative defense (i.e., that they exercised reasonable care to prevent and correct any harassing behavior and Plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided) and at the same time, deprive Plaintiff of the documents necessary to test that claim of reasonable care. *See Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 460 (S.D.N.Y. 2019) ("When an employer puts the reasonableness of an internal investigation at issue by asserting the *Faragher/Ellerth* defense, the employer waives any privilege that might otherwise apply to documents concerning that investigation.") (citation omitted); *see Johnson*, 2017 WL 3432301, at *8 (describing the *Faragher/Ellerth* defense: "When the harasser is a 'supervisor' and 'no tangible employment action is taken,' the corporate 'employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any-harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided'") (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)). Pillsbury claims that Mercer Kitchen does not intend to assert a *Faragher/Ellerth* defense in this case. *See* Dkt. No. 85 at 6.

7

To the extent that Ms. Rizzo shared the results of her investigation with AHRA, Plaintiff's claim of waiver confuses disclosure of the conclusion of an investigation with disclosure of communications that resulted in that conclusion.  *See In re Gen. Motors*, 80 F. Supp. 3d at 528.  Reading Plaintiff's allegations and evidence generously, Ms. Rizzo disclosed some findings of the Pillsbury investigation—there was no corroboration for Plaintiff's claims and Plaintiff harbored animosity for the accused hotel employee.  She did not share with AHRA client communications (or documents containing client communications) or the contents of the interviews that resulted in that conclusion.  She did not tell AHRA what she told the client or what the client had told her.  Accordingly, there was no waiver.  *See id.*

Fourth, Plaintiff argues that Pillsbury's interviews are not privileged because they were conducted with employees of Mercer *Hotel* and not Mercer Management.  In its view, only interviews with those on the payroll of Mercer Management could enjoy the protection of the attorney-client privilege.  But Plaintiff's argument takes too narrow a view of *Upjohn*.  Following *Upjohn*, courts in this District have held that communications between counsel and a client's agents for the purpose of collecting information are protected by the attorney-client privilege where "the agent 'possesse[s] the information needed by the corporation's attorneys in order to render informed legal advice.'"  *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 491 (S.D.N.Y. 2019) (quoting *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 218-19 (S.D.N.Y. 2001)); *see In re Gen. Motors*, 80 F. Supp. 3d at 526-31 (attorney-client privilege protected communications between current and former employees and agents of defendant and outside counsel).  The Court need not address the outer bounds of that doctrine.  This case is not close to

---

Accordingly, the Court need not address Plaintiff's claim that a party cannot commission an investigation to provide legal advice to its client in connection with anticipated litigation and later assert such a defense.

the periphery.  Mercer Management's "sole business purpose" is to manage the Mercer Hotel and provide supervision of Mercer Hotel staff, Dkt. No. 85 at 7; that staff, in turn, carries out the directives from Mercer Management and acts as its agents.

Finally, Plaintiff argues that Pillsbury cannot assert a legal privilege on behalf of its client, Mercer Management, because Mercer Management is not a defendant in this action. Implicitly, Plaintiff seems to be arguing that a party can only assert a privilege against production of documents revealing attorney-client communications if it has been sued.  That argument has been swiftly rejected by the courts.  "The fact that a non-party has standing to challenge a subpoena directed to someone else in a situation where the non-party seeks to protect its property right or privilege, is not surprising or novel."  *Pleasant Gardens Realty Corp. v. H. Kohnstamm & Co.*, 2009 WL 2982632, at *4 (D.N.J. Sept. 10, 2009) (collecting cases).  The subpoena was issued to non-party Pillsbury.  Non-party Mercer Management, through its counsel Pillsbury, challenges the subpoena to protect its privilege.  *See In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987) ("[P]rivilege belongs solely to the client and may only be waived by him."). Because Mercer Management, through its counsel, is "claiming a privilege regarding the material sought in the subpoena, it ha[s] standing to challenge the subpoena served on [its counsel]."  *Est. of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009); *see also Est. of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 554 (S.D.N.Y. 2005) (granting non-party's motion to quash a subpoena that was served on its non-party counsel due to attorney client privilege).

Regardless of whether Mercer Management is a party in this action, it would have standing to challenge a subpoena seeking documents over which it asserts a privilege.  *See Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 57 (S.D.N.Y. 2018) ("Parties generally do not have standing to object to subpoenas issued to non-party witnesses [but]

9

exceptions are made for parties who have a claim of some personal right or privilege with regard to the documents sought.") (internal citations and quotation marks omitted). The privilege protects the client against *disclosure* of communications in order to give "professional advice to those who can act on it" and give "information to the lawyer to enable to him to give sound and informed advice." *Upjohn*, 449 U.S. at 390. It does not protect against only its *use* in litigation against the privilege-holder and the circumstances when it can be invoked thus cannot be confined simply to litigation against the privilege-holder.

### B.     Attorney Work Product

Pillsbury also argues that, in the event the requested communications are not protected by the attorney-client privilege, they would be protected by the attorney work product doctrine. That argument is well-founded.

The attorney work product doctrine "shields from disclosure materials prepared 'in anticipation of litigation' by a party, or the party's representative, absent a showing of substantial need." *Adlman*, 68 F.3d at 1501 (quoting Fed. R. Civ. P. 26(b)(3)). "The purpose of the doctrine is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation." *Id.* "Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within [the protection of the attorney work-product doctrine]." *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998). "A document will be protected if, 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015) (quoting *Adlman*, 134 F.3d at 1202). The protection, however, does not extend to "documents that are prepared in the

ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Adlman*, 134 F.3d at 1202.

Pillsbury has satisfied the requirements for attorney work product protection. At the time it commenced each investigation, litigation was "a real, rather than speculative, concern," *Gould Inc. v. Mitsui Mining & Smelting Co., Ltd.*, 825 F.2d 676, 680 (2d Cir. 1987), and not just "a vague abstract possibility without precise form," *Adlman*, 68 F.3d at 1501. As to the first investigation, the employee made affirmative statements regarding the money to be made by lodging a harassment complaint, filed an internal complaint regarding harassment and other misconduct, and retained personal counsel. Second Rizzo Decl. ¶ 8. The substance of that threat is confirmed by the later fact that the investigation ended in a negotiated settlement with the employee's counsel. *Id.* ¶ 13. Plaintiff's complaint in this action came one year later in the shadow of that investigation and negotiated settlement, and it was made after, and not before, Plaintiff's employment was terminated. It was not necessary for Mercer Management to wait to see if Plaintiff decided to pursue litigation. The threat of litigation was real even before that time.

Plaintiff argues that he did not threaten litigation before Pillsbury started the investigation. But invocation of the attorney work product doctrine does not turn on whether the subject of the investigation has uttered the words, "I will sue you." Were that the rule, a crafty litigant would be able to deprive her adversary of the zone of privacy to which it is entitled to prepare for litigation by the expedient of simply withholding the explicit threat. Here, it was reasonable for Mercer Management to assume that, if Plaintiff made his complaint after he was terminated, it was as a prelude to actual litigation. *See* Charles A. Wright & Arthur R. Miller, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed. 2020) ("Prudent parties anticipate litigation, and begin

11

preparation prior to the time suit is formally commenced."). The invocation of attorney work product thus was not pretextual nor was Mercer Management's concern regarding litigation illusory. This is not a case where a party with no fear of litigation stamps attorney work product onto documents in order to permit sharing those documents with friends, while shielding them from foe. "[I]n light of the nature of the document and the factual situation in the particular case, the document[s] can fairly be said to have been prepared or obtained because of the prospect of litigation." Restatement (Third) of the Law Governing Lawyers § 87 (2000) (quoting Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2024); *see id.* ("In one sense, almost all of a lawyer's work anticipates litigation to some degree, because preparing documents or arranging transactions is aimed at avoiding future litigation or enhancing a client's position should litigation occur. However, the immunity covers only material produced when apprehension of litigation was reasonable in the circumstances.").

Plaintiff's principal response is to note that it is not sufficient that a document, which ordinarily would be prepared in the ordinary course of the client's business, was prepared by a lawyer. *See OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, 2006 WL 3771010, at *5 (S.D.N.Y. Dec. 15, 2006) (investigative reports prepared by or for an insurer prior to a coverage decision were not protected from discovery). Thus where, for example, an employer routinely conducts investigations in response to a claim of discrimination and the investigation at issue is part of that routine, the investigator cannot shield the documents from production under the attorney work product doctrine merely by involving a lawyer and stamping the documents as work product. *See Johnson*, 2017 WL 3432301, at *6. But, "even where a business . . . has a policy of conducting such investigations, the circumstances of a particular investigation may indicate that it had a unique purpose related to impending litigation, triggering work product protection." *Id.*

This is such a case. The undisputed evidence submitted by Mercer Management demonstrates that regardless of whether it had a routine practice of investigating discrimination claims, the two investigations conducted by Pillsbury each responded to unique circumstances relating to litigation that were reasonably anticipated.

Plaintiff has not argued that it has a substantial need for the material in the possession of Pillsbury to prepare its case or that it cannot obtain the substantial equivalent without undue hardship. *See* Fed. R. Civ. P. 26(b)(3). Accordingly, the subpoenaed materials are protected by the attorney work product doctrine.

## CONCLUSION

The motion to quash the subpoena is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. No. 71.

SO ORDERED.

Dated: April 7, 2021
New York, New York

LEWIS J. LIMAN
United States District Judge